EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* DANIEL RIJOS OQUENDO, acusado y apelante.

Núm. 9043.—*Sometido:* Diciembre 12, 1941. *Resuelto:* Enero 23, 1942.

*Adolfo Valdés,* abogado del apelante; *Hon.. Procurador General George A. Malcolm, R. A. Gómez, Fiscal del Tribunal Supremo* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

Daniel Rijos Oquendo fué declarado culpable por un jurado ante la Corte de Distrito de San Juan de un delito de homicidio involuntario y apela de la sentencia que le impuso dicha corte condenándole a cumplir seis meses de cárcel. El único error que alega, como base de su recurso es "que el veredicto es contrario a la prueba".

La acusación formulada dice, en lo pertinente, así:

". . . el referido Daniel Rijos Oquendo, allá para el día 23 de noviembre de 1940, y en la municipalidad de San Juan, P. R., que forma parte del distrito judicial del mismo nombre, mientras guiaba como conductor un auto-*truck,* vehículo pesado de motor, por la carretera Avenida Fernández Juncos, zona urbana, lo guió y dirigió ilegalmente, con tal descuido y negligencia y sin la debida prudencia y circunspección, que córriendo ilegalmente (1) a una velocidad exagerada (2) por el centro de dicha carretera (3) sin reducir la velocidad al aproximarse a una boca calle, no obstante estar dando alcance y acercándose a peatones que transitaban a uno y otro lado del camino, y sin tener en cuenta el ancho y tráfico del camino, no tomó las precauciones debidas y lo dejó chocar ilegalmente con el cuerpo del ser humano Juan Quiñones O'Neill, quien transitaba a pie por el centro de la mencionada carretera, cruzando la misma de Norte a Sur, arrollándole e infiriéndole de esta manera ilegal, golpes y contusiones de carácter grave, que le ocasionaron la muerte de este modo ilegal, al referido Juan Quiñones O'Neill. . . ."

La prueba de cargo consistió en las declaraciones de tres testigos de los cuales uno solo presenció el accidente, Pablo Hernández Pérez que, en síntesis, declaró que el acusado venía guiando un truck por la Avenida Fernández Juncos como a las siete de la noche del día 23 de noviembre de

1940, por el centro de la carretera, a una velocidad como de 40 millas por hora, en dirección a Río Piedras; que el truck tenía sus luces encendidas y tocó *klaxon;* que en ese momento y al acercarse a la calle Monserrate estaba cruzando la carretera el señor Juan Quiñones y cuando se acercaba al centro de la calle que es ancha, el truck le dió con la parte izquierda del guardalodo izquierdo, cayó y quedó tendido un poco hacia la izquierda; que el acusado paró a 25 pies, se apeó y recogió al hombre para llevarlo al hospital.

Los otros dos testigos de cargo si bien no vieron los hechos, se dieron cuenta del accidente cuando oyeron el golpe del truck con el cuerpo de Quiñones y corroboran al anterior testigo en cuanto a que vieron el cuerpo tendido hacia la izquierda del centro de la carretera.

La prueba documental del Fiscal consistió en el certificado de defunción de Juan Quiñones O'Neill, y en el informe de la autopsia practicada por el Dr. Antonio Martínez Alvarez en su cadáver y en el que hace constar que la causa de la muerte fué una hemorragia intratorácica y el *shock* traumático producido por las fracturas de la segunda, tercera y cuarta costillas del lado izquierdo.

La prueba de la defensa consistió en la declaración de tres testigos y del propio acusado. Julio Rossy y Sixto González, que estaban juntos, declararon más o menos lo mismo, es decir, que Juan Quiñones estaba cruzando la carretera cuando venía el truck guiado por el acusado; que éste tocó klaxon y que ellos le gritaron a Quiñones que no cruzara pero él siguió y entonces el truck le dió; que eso ocurrió en el medio de la boca calle; que no saben qué parte del truck fué la que le dió porque ellos estaban del otro lado; que el truck paró como a tres o cuatro yardas del sitio.

El otro testigo, Tito Nieves Torres declaró que él venía guiando un truck en dirección contraria al acusado y vió cruzar, como a 40 yardas, a un hombre hasta el medio de la carretera y entonces vió venir al truck del acusado y "al llegar a la mitad de la carretera, el muchacho (el acusado)

defendió un poco y siempre le alcanzó a dar con la parte derecha de la caja''; que el truck del acusado venía a 20 ó 25 millas y tocó klaxon y paró a una yarda.

El acusado, explicando el accidente, se expresó así:

"P.—¿Qué sucedió cuando usted se aproximó a la intersección de la calle Monserrate?

"R.—Venía un cuerpo, un anciano cruzando, un cuerpo que yo ví que cruzaba y bien alante cruzó una niñita.

"P.—¿Qué hizo usted?

"R.—Puse el freno de pie y toqué claxon.

"P.—¿Y qué pasó?

"R.—Después yo sentí como en la cabina del truck un golpe e inmediatamente paré y usé el freno de pie y miré y ví un señor en el suelo y apagué mi truck y lo recogí.

"P.—¿Con qué parte del truck fué el golpe?

"R.—Con la parte del lado; por donde yo voy sentado.''

Más adelante declaró que tenía sus luces encendidas y que tocó klaxon. Al ser repreguntado por el fiscal declaró lo siguiente:

"P.—¿Al usted tocar claxon el señor continuaba para el centro a pesar de haber tocado claxon?

"R.—Continuaba.

"P.—¿Y usted no se paró?

"R.—Si él no estaba en la parte mía y nada había que me obstaculizase; él iba por el centro.

"P.—¿Y usted por dónde iba?

"R.—Por mi derecha.

"P.—¿Y cómo eso es posible si usted oyó que los testigos dicen que le dió en el centro de la carretera?

"R.—En el centro de la carretera fué que cayó él.''

Sin objeción de la defensa la corte inferior admitió la declaración prestada por el acusado ante el fiscal en la investigación preliminar del caso y en ella aparece lo siguiente:

"F.—¿Usted vió ese hombre que cruzaba?

"T.—Sí, señor, y cuando yo le toqué *klaxon, yo pensé que él se detendría, que no seguiría pasando, pero parece que siguió y tropezó con la caja del truck.*

"F.—¿A pesar de eso usted no frenó, sino que continuó su marcha?

"T.—Yo continué la marcha, porque al frente no tenía nada.

"F.—¿Usted no vió a ese hombre en el medio de la carretera?

"T.—Él iba caminando hacia adelante para el medio de la carretera." (Itálicas nuestras.)

Somos de opinión de que, con esta prueba, el jurado estuvo justificado en rendir un veredicto de culpabilidad. Fué contradictoria y el jurado dirimió el conflicto en contra del acusado. No se alega ni se ha demostrado que el jurado actuara movido por pasión, prejuicio o parcialidad y estando en mejores condiciones que nosotros para apreciar la forma en que declararon los testigos no puede sostenerse que incurriera en manifiesto error en la apreciación de la prueba. *Pueblo* v. *Cruz,* 59 D.P.R. 569, 571.

Al caso de autos es aplicable la doctrina establecida en el de *El Pueblo* v. *Benjamín,* 44 D.P.R. 445, en el que este tribunal, por su Juez Presidente Sr. Del Toro, se expresó como sigue:

"La carretera era recta y suficientemente ancha. La viejita había llegado o estaba próxima a llegar al centro de la misma. Pudo ser vista a tiempo para evitar el accidente. No ya de la prueba del Pueblo, no obstante lo que dijo el primer testigo, si que también de la del propio acusado, puede deducirse que el auto caminaba por la izquierda y tan rápidamente que no pudo detenerse a tiempo *o que el acusado guiaba con tal descuido que no advirtió al ser humano que cruzaba la carretera o que habiéndolo advertido fué tan inexperto que no supo evitar el injuriarlo. No se trata de un caso de una persona que aparece súbitamente cuando ya es imposible dejar de chocar con ella."* (Itálicas nuestras.)

Juan Quiñones ya estaba en el centro de la carretera de la Avenida Fernández Juncos, que es ancha. Si el acusado hubiera venido guiando su truck a una velocidad moderada y tomando las debidas precauciones, habría podido fácilmente evitar el accidente. Al ver a la persona que estaba cruzando la carretera debió reducir su velocidad a tal extremo que hubiera podido detener o desviar su vehículo antes del choque y no confiar exclusivamente en su klaxon. Parece, sin

embargo, que el acusado, según declaró, pensó que Quiñones se detendría y continuó a la misma velocidad en que iba y no pudo evitar darle con el guardalodos izquierdo. Que fué un golpe fuerte lo demuestran las tres costillas fracturadas y la hemorragia interior que ocasionaron la muerte a Quiñones. Bajo todas las circunstancias concurrentes no estaríamos justificados en variar el veredicto rendido por el jurado en este caso.

*Se confirma la sentencia apelada.*

El Juez Asociado Sr. Snyder no intervino.